UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA      )
      )
      )
v.      )      No. 2:18-CR-140
      )
ANDREW ASSAD, *et al.*      )

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on defendants', Larry Everett Smith ("Smith"), Tanith Enterprises, LLC *d/b/a* Medvest Management Services ("Tanith"), and ULD Wholesale Group, LLC ("ULD"), Alpha-Omega Pharmacy, LLC ("Alpha-Omega"), Germaine Pharmacy, Inc. ("Germaine"), and ERX Consultants, LLC *d/b/a* Zoetic Pharmacy ("Zoetic"), (collectively the "Smith Defendants"), Joint Motion for Severance, [Doc. 128], the United States' Response, [Doc. 146], and the defendants' Joint Reply, [Doc. 150].

Defendants, Andrew Assad ("Assad"), Peter Bolos ("Bolos"), Michael Palso ("Palso"), Synergy Pharmacy Services, Inc. ("Synergy"), and Precision Pharmacy Management, LLC ("Precision"), (collectively the "Synergy Defendants"), move for leave to join and adopt the Smith Defendants' Joint Motion for Severance. [Docs. 129, 151].

## I. Background

The following synopsis summarizes the relevant allegations in the indictment that the government eventually must prove beyond a reasonable doubt.

Defendants are either pharmacists, pharmacies, wholesalers, owners, or managers who operated pharmacies. The indictment alleges that beginning around June 2015 and continuing through on or about April 2018, defendants knowingly and willfully engaged in a scheme to

fraudulently bill Medicare, Medicaid, TRICARE, FECA, FEHBP, and private insurance carriers for in exchange for kickbacks and bribes. [Doc. 1 at ¶¶ 32, 33]. According to the indictment, defendants executed the conspiracy by scheming with the telemedicine company, Healthright[1], to deceive doctors to prescribe to patients certain medications that the defendant pharmacies found to be the most profitable. [*Id.* at ¶¶ 32, 34-38]. The telemedicine company orchestrated the fraud by allegedly selling these prescriptions with profitable drugs to the defendant pharmacies. [*Id.* at ¶¶ 34-38]. Afterwards, in submitting a claim of reimbursement to the patients' insurance carriers through pharmacy benefit managers ("PBM"), the defendant pharmacies allegedly misrepresented their purchase price of the medications, suggesting it was close to the average whole price ("AWP"), when in reality, the purchase price was much lower. [*Id.* at ¶¶ 39-44]. Defendants profited from the misrepresentation and split the proceeds with the telemedicine company. [*Id.* at ¶¶ 45-66]. Overall, the indictment alleges defendants obtained approximately $172,202,105 as payment for health care benefits, items, or services as a result of approximately $931,356,936 in fraudulent claims for payment. [*Id.* at ¶¶ 1].

On October 9, 2018, defendants were charged by way of indictment with 32 separate counts: one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, 29 counts of mail fraud in violation of 18 U.S.C. § 1341, and two counts of misbranding drugs in interstate commerce with intent to defraud and mislead, in violation of 21 U.S.C. §§ 331(a), 353(b)(1), and 333(a)(2). [*Id.*].

---

[1] Healthright, LLC, not a defendant in this case, was a telemedicine company who schemed with the present defendants. [Doc. 1 at ¶¶ 10, 19, 32]. Healthright and its owner, Scott Roix, were charged with various criminal offenses in this District. *See United States v. Scott Roix, and Healthright, LLC*, No. 2:18-cr-133 (E.D. Tenn.). They have pled guilty and are awaiting sentencing.

## II.      Analysis

Defendants argue that the Court should grant a severance of the Smith Defendants from their co-defendants, the Synergy Defendants, allowing the two groups to proceed to trial separately. [Doc. 128].  In seeking severance, defendants contend that Count One, conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, is duplicitous because it charges two separate conspiracies.  [*Id.* at 3-8].  Defendants also assert that pursuant to Federal Rule of Criminal Procedure 8(b), the two factions would face substantial prejudice if tried collectively.  [*Id.* at 8-11].  Finally, the Smith Defendants argue improper joinder with the Synergy Defendants under Federal Rule of Criminal Procedure 14(a).  [*Id.* at 11-19].  The Court will address each argument in turn.

### A.  Duplicity of Count One

"An indictment is duplicitous if it sets forth separate and distinct crimes in one count."  *United States v. Gandy*, ___ F.3d ___, 2019 WL 2400983, at *26 (6th Cir. 2019) (quoting *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007)).  The primary concern with a duplicitous indictment is that a defendant may be deprived of his or her right to a unanimous jury verdict.  *United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 2002).  "Whether an indictment is duplicitous is a legal question."  *United States v. Maricle*, No. 6:09-16-KKC, 2013 U.S. Dist. LEXIS 151237, at *9 (E.D. Ky. Oct. 22, 2013) (citing *Id.*).

"When the crime charged is a conspiracy, the general rule is that '[a] single agreement to commit several crimes constitutes one conspiracy.'"  *United States v. Campbell*, 761 Fed. App'x 476, 482-83 (6th Cir. 2019) (alteration in original) (citation omitted).  "An indictment does not charge multiple conspiracies if there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy."  *United States v. Kelley,*

461 F.3d 817, 830 (6th Cir. 2006) (citation and internal quotations omitted). "But where there are 'multiple agreements to commit separate crimes,' then there are several conspiracies." *Id.* at 483 (quoting *United States v. Broce*, 488 U.S. 563, 570-71 (1989)).

Count One of the indictment, conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, alleges that the defendants had two common objectives: to defraud both public and private medical benefit programs, and for personal financial gain. [Doc. 1 at ¶¶ 32, 33].

Defendants argue Count One is duplicitous because "it alleges two separate and distinct conspiracies," one between Healthright and the Smith Defendants and another between Healthright and the Synergy Defendants. [Doc. 128 at 4]. Further, defendants contend the indictment does not allege that the Smith Defendants had any knowledge whatsoever of, or worked towards a common goal with the Synergy Defendants and vice versa. [*Id.*]. The defendants maintain that the indictment alleges that both groups worked independently with Healthright for their own financial gain as competitors in the pharmaceutical industry. [*Id.* at 4-5]. Apart from lacking an overall common agreement, and having different members, defendants argue that the indictment alleges distinct overt acts taken on behalf of one group of defendants versus the other group. [*Id.* at 5].

The government argues that the indictment is not duplicitous, because on its face, it alleges only one conspiracy with a common goal, a common scheme, and common victims. [Doc. 146 at 1-2, 9-14]. The government contends that each defendant agreed to join the conspiracy and each defendant engaged in a common scheme to deceive insurance companies, PBMs, doctors, and patients. [*Id.* at 9]. Specifically, the government argues both the Smith and Synergy Defendants conspired with other members of the conspiracy to submit claims to the PBMs that they knew were fraudulent, and then devised and implemented various plans to conceal the scheme from the PBMs,

the doctors, and patients. [*Id.*]. The government contends the alleged overt acts taken by the Smith and Synergy Defendants are not distinct, and are "insignificant when analyzed in the context of the other allegations in the indictment." [*Id.* at 10]. Further, the government argues that the actions committed by both the Smith and Synergy Defendants could be found in furtherance of one overall plan, a single, continuing conspiracy. [*Id.*]. The government maintains that whether the Smith Defendants knew the Synergy Defendants personally is irrelevant to whether the indictment charges a single conspiracy. [*Id.*]. The government further argues that proof of a single conspiracy does not depend on whether co-conspirators personally knew or interacted with each other. [*Id.*].

Here, the evidence establishes one overall agreement. The indictment alleges that Healthright artificially generated enormous demand for specific medications with lucrative inflated prices. [Doc. 1 at ¶ 48]. Healthright, in turn, allegedly sold these profitable prescriptions to both sets of defendants pursuant to written marketing agreements between Healthright and the defendants. [*Id.* at ¶ 38]. As a result of the agreements, both sets of defendants allegedly paid Healthright kickbacks for these prescriptions; the stream of payments from the defendants constituted Healthright's sole source of income. [*Id.* at ¶ 48]. According to the indictment, all defendants submitted claims for payment for these purchased prescriptions to the PBMs for reimbursement from health care benefit programs. [*Id.* at ¶¶ 41-42]. The indictment further alleges that, in submitting these claims, all defendants billed the medications at the public AWP, which in reality exceed the actual purchase price. [*Id.*]. This deceitful practice, allegedly followed by all defendants, was contrary to the PBMs provider agreements.

The common goals of the scheme are evident. According to the indictment, Healthright and the defendants conspired to defraud various health care benefit programs, and as a result obtain large sums of money for personal gain. [Doc. 1 at ¶ 33]. The indictment further alleges that both

the Smith and Synergy Defendants submitted inaccurate claims to PBMs for reimbursement from the medical benefit programs in order to receive a windfall profit. As a result of this alleged scheme, both sets of defendants profited. The Synergy Defendants received approximately $77,835,482 and the Smith defendants received approximately $24,919,254 in compensation for participating in this scheme. [*Id.* at ¶¶ 84, 87].

The defendants participated in the conspiracy by entering into agreements with Healthright to provide them with a stream of profitable prescriptions as per defendants' requests. Both sets of defendants submitted inaccurate bills to the PBMs in order to receive increased compensation on the prescriptions. A portion of that profit was given to Healthright to purchase more of these lucrative prescriptions. The Smith and Synergy Defendants' role in the conspiracy was to provide Healthright with consistent payments to keep the telemedicine company afloat. [*Id.* at ¶¶ 34, 38, 48, 84, 87]. The fact that both the Smith and Synergy Defendants allegedly participated in the conspiracy and had the alleged same role does not lessen the larger scheme and purpose of the conspiracy, or the fact that the count charged in the indictment describes one continual conspiracy. Multiple defendants can perform in the same role within a single conspiracy, and charging a number or variety of acts is not duplicitous. The conspiracy alleged in Count One describes seemingly independent transactions, but are parts of a single conspiracy by their place in a pattern of regularized activity involving a significant continuity of membership. *See Campbell*, 761 Fed. App'x at 483. *See also United States v. Mayweather*, 57 F.3d 1071 (6th Cir. 1995). The acts alleged in the indictment all contribute to a single, unified conspiracy.

The Court rejects defendants' argument that because the Smith and Synergy Defendants had no knowledge of each other, there cannot be a single conspiracy alleged in the indictment. There is longstanding precedent in the Sixth Circuit that while a single conspiracy does not become

multiple conspiracies simply because each member of the conspiracy does not know every other member, it is necessary to show that each alleged member "agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Adan*, 913 F.Supp. 2d 555, 574 (M.D. Tenn. 2012) (citing *United States v. Warner*, 690 F.2d 545, 549 (6th Cir. 1982). Further, the Sixth Circuit has "found single conspiracies even where the connections between the co-conspirators were minimal." *United States v. Swafford*, 512 F.3d 833, 842-43 (6th Cir. 2008) (citing *Kelley*, 849 F.2d at 1003). As evidenced from the indictment, although the two groups of defendants were unaware of each other's existence, their independent patterns of conduct served the conspiracy's purpose of defrauding health care benefit programs for personal financial gain.

Accordingly, this Court concludes that defendants cannot demonstrate that Count One of the indictment is duplicitous.

### B. Federal Rule of Criminal Procedure 8(b)

Federal Rules of Criminal Procedure 8 and 14 govern the joinder and severance of defendants in an indictment, respectively. Rule 8 provides that an "indictment or information may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Fed. R. Crim. P. 8(b). Rule 14 provides that if the proper joinder of defendants under Rule 8 "appears to prejudice a defendant . . . the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a); *see also United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007).

The foundational Rule 8 question is whether "each of the counts of the indictment arises out of the same act or transaction or series of acts or transactions." *United States v. Hatcher*, 680 F.2d 438, 441 (6th Cir. 1982). The Court concludes that Count One, in these circumstances, does.

Under Rule 8(b), a group of acts or transactions constitutes a series of acts or transactions if they are "logically interrelated," such as they "are a part of a common scheme of plan." *United States v. Lewis*, 363 Fed. App'x 382, 390 (6th Cir. 2010). *See United States v. Frost*, 125 F.3d 346, 389 (6th Cir. 1997). The Court looks "to the allegations in the indictment to determine whether joinder was proper." *United States v. Teadt*, 653 Fed. App'x 421, 425 (6th Cir. 2016). *See Lewis*, 363 Fed. App'x at 390-91 (noting instances where the Sixth Circuit has "also considered the government's proofs when assessing the propriety of joinder"). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534 (1993). To follow a different path would present problems for the justice system, because "[s]eparate trials produce additional labor for judges and juries, which results from the unnecessary repetition of evidence and trial procedures." *United States v. Caver*, 470 F.3d 220, 238 (6th Cir. 2006). Accordingly, Rule 8(b) is "construed in favor of joinder." *Hatcher*, 680 F.2d at 440. A defendant seeking severance bears a strong burden and must demonstrate substantial, undue, or compelling prejudice. *Caver*, 470 F.3d at 238.

Defendants assert the Smith and Synergy Defendants are improperly joined and would face substantial prejudice if tried together, and therefore, severance is warranted under Rule 8(b). [Doc. 128 at 8-11]. More particularly, the Smith Defendants argue their alleged actions do not arise out of the same series of transactions as those alleged among the Synergy Defendants. [*Id.* at 9-10].

The government contends that because the indictment alleges a single conspiracy, joinder is per se proper under Rule 8(b). [Doc. 146 at 2]. Further, the government argues that even if the

indictment alleges multiple conspiracies, joinder is nevertheless proper under Rule 8(b), because the indictment alleges the defendants participated in the same series of transactions by utilizing the same methods and means to deceive the same insurance companies, PBMs, doctors, and patients. [*Id.* at 2, 14-17]. The government argues that both the Smith and Synergy Defendants shared the common goal of profiting by deceiving many of the same PBMs, and they utilized the same manner and means to execute the scheme. [*Id.* at 15]. The government highlights that both sets of defendants executed similar agreements with Healthright to purchase prescriptions, entered into similar agreements with the same PBMs, and used the same means to maximize the scheme's profitability and ensure the compensation from the PBMs. [*Id.*]. The government argues the indictment makes plain that defendants engaged in a logically interrelated series of acts and transactions that were part of a common scheme or plan. [*Id.* at 16].

Here, Count One charges all defendants with conspiracy to commit health care fraud. *See* [Doc. 1 at 1-36]. A facial review of the indictment reveals that the alleged conspiracy articulated in Count One was part of a continuing series of transactions which began with the common scheme of defrauding health care benefit programs to obtain large sums of money by submitting fraudulent claims for payment for prescriptions to PBMs, who acted on behalf of the health care benefit programs. [*Id.* at 1]. Both groups of defendants entered into similar "marketing" agreements with Healthright. [*Id.* at ¶ 38]. The agreements allegedly required Healthright to provide defendants with prescriptions of profitable medications from a specified list in exchange for a steady stream of payment. [*Id.*]. Defendants allegedly purchased the specified medications for a fraction of the average wholesale price. [*Id.* at ¶ 40]. Finally, both sets of defendants submitted claims for payment to the PBMs in which they allegedly misrepresented that the purchase prices for

medications was equal to the manufacturer reported prices. [*Id.* at ¶¶ 41-42]. These facts are logically interrelated so as to make joinder proper. *See Frost*, 125 F.3d at 390.

Further, "[i]t is well settled that joinder is proper under Rule 8(b) where an indictment charges multiple defendants with participation in a single conspiracy." *Warner*, 690 F.2d at 551. Because the indictment properly charges a health care fraud conspiracy, with the substantive crimes also forming the predicate acts for the conspiracy, it satisfies Rule 8(b).

Defendants assert that the indictment fails to allege that the Smith Defendants and the Synergy Defendants knew of or interacted with each other; instead, defendants argue the two groups were "competitors who allegedly acted independently with Roix and HealthRight for their own purported financial gain." [Doc. 128 at 10]. To the contrary, the government charges that all the defendants were associated because they participated in the same conspiracy. The fact that these defendants operated in parallel within the scheme is of no moment because the indictment alleges they all engaged in the same online conspiracy with Healthright. One need not have direct contact with the other co-conspirators or even know the existence of all the co-conspirators in order to participate in the same conspiracy or share the same criminal purpose. *See United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991) ("As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators.").

As such, the defendants were involved in a series of logically interrelated acts and transactions in furtherance of one larger conspiracy and, as a result, are properly charged in the same indictment.

## C.  Federal Rule of Criminal Procedure 14(a)

Rule 14 provides that if the proper joinder of defendants under Rule 8 "appears to prejudice a defendant . . . the court may order separate trials of counts . . . or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a); *see also Cody*, 498 F.3d at 587.

"[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro*, 506 U.S. at 539.  But it is "well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."  *Id.* at 540.  "Even where the risk of prejudice is high, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'"  *United States v. Ross*, 703 F.3d 856, 884 (6th Cir. 2012) (quoting *Zafiro*, 506 U.S. at 534).  Ultimately, the decision to sever counts is within the trial court's discretion.  *See United States v. Fields*, 763 F.3d 443, 456 (6th Cir. 2014) (citing *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005)).

A defendant is prejudiced "if the jury would be unable to keep the evidence from each offense separate and unable to render a fair and impartial verdict on each offense."  *United States v. Rox*, 692 F.2d 453, 454 (6th Cir. 1982).  Thus, "[a] request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants."  *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (citation and internal quotation marks omitted).  But "absent a showing of substantial prejudice, spillover of evidence from one [count] to another does not require severance."  *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006) (citing *United States v. Johnson*, 763 F.2d 773, 777 (6th Cir. 1985)).  The defendant bears the

burden of proving prejudice. *United States v. Smith*, 138 Fed. App'x 775, 781 (6th Cir. 2005) (citation omitted).

Defendants argue that even if they were properly joined under Rule 8, the Court should order severance under Federal Rule of Criminal Procedure 14(a), because a joint trial would prejudice the Smith Defendants. [Doc. 128 at 11-19]. Defendants seek to show prejudicial joinder by asserting a cumulative prejudicial spillover effect that may prevent the jury from sifting through the evidence and make an individualized determination as to each defendant. [*Id.* at 12].

The government argues the defendants have failed to meet their burden under Rule 14 to establish factually specific and compelling prejudice. [Doc. 146 at 2]. The government maintains that the potential for some spillover does not establish compelling prejudice. [*Id.* at 18-19]. The government avers the defendants' reasons either alone or in aggregate do not warrant a severance. Finally, the government argues defendants' contentions that severance is necessary because they anticipate the government will introduce evidence against the Synergy Defendants at trial undercuts controlling precedent in this Circuit. [*Id.* at 19].

Defendants argue there are numerous differences between the alleged schemes that will cause substantial prejudice if the Smith Defendants are not severed from the Synergy Defendants. [Doc. 128 at 13]. Specifically, the Smith Defendants argue that the Synergy Defendants allegedly have greater contact with this District, allegedly entered into the scheme one year earlier than the Smith Defendants, and have allegedly paid Healthright over 20 million dollars more in kickbacks than the Smith Defendants. [*Id.* at 13-14]. Further, the defendants argue that the Smith Defendants never processed prescriptions through Healthright for patients insured by Medicare, Medicaid, and TRICARE, and thereby those patients are not alleged victims of the Smith Defendant's scheme. [*Id.* at 14]. Defendants argue that because the government has alleged several important

differences between the schemes, the Smith Defendants will be subject to substantial prejudice by the spillover effects of the evidence presented to the jury related solely to the Synergy Defendants. [*Id.* at 15].

The Synergy Defendants separately argue that it would be fundamentally unfair for the Smith Defendants' trial on distinct acts to be comingled with the alleged acts of the Synergy Defendants. [Doc. 129 at 3]. Defendants further assert that any jury would have a natural tendency to lump all of the indicted defendants together and to impute the Synergy Defendants' related evidence together with the Smith Defendants' related evidence. [*Id.*]. As such, defendants argue that the substantial risk that the jury will not be able to compartmentalize or distinguish between all of the indicted defendants would cause undue prejudice and jury confusion. [*Id.*].

The government contends the minor differences between the Smith and Synergy Defendants are insufficient to establish compelling prejudice or confuse a jury. [Doc. 146 at 19-20]. The government maintains that the overlapping conduct alleged in the indictment undercuts defendants' argument that numerous differences existed between the alleged schemes. [*Id.* at 19]. The government argues that defendant's have failed to specify or explain why the minor differences in the allegations between the defendants would cause prejudice or confuse a jury. [*Id.*].

The conspiracy charging all defendants in Count One consists of an overall alleged scheme to defraud health care benefit programs, and pocket that fraud's proceeds. Although not all defendants participated in each overt act listed in the indictment, the evidence would be admissible even if the groups of defendants were tried separately as part of the larger allegedly illegal scheme. *See* [Doc. 1 at 31-34]. *See also United States v. Chapple*, No. 09-20224, 2010 WL 940016, at *1 (E.D. Mich. Mar. 12, 2010) (The court found severance was not warranted where the defendant

allegedly participated in a single health care fraud conspiracy, and the evidence would be admissible if defendant was tried alone, and a limiting instruction would suffice to cure any risk of prejudice).  Defendants both have raised concerns that are inherent in joint trials and have been held to fall short of compelling prejudice: that "proof is greater against a co-defendant," *Warner*, 971 F.2d at 1196, and that "inflammatory evidence [could be] admitted against one defendant, not directly involving another codefendant," *United States v. Gallo*, 763 F.2d 1504, 1525 (6th Cir. 1985).

The text of Rule 14 expressly provides that a judge "may provide any other relief that justice requires."  Fed. R. Crim. P. 14.  Defendants argue that this is a case where no amount of cautionary jury instructions could undo the harm caused by spillover evidence.  [Doc. 128 at 18-19].  The government contends that proper jury instructions could cure any potential risk of prejudice from spillover evidence, and the Court may instruct the jury on how to weigh the evidence against each individual defendant.  [Doc. 146 at 22-23].  The Court concludes that if there were any remaining prejudice, a limiting jury instruction that the jury separately consider evidence against each defendant on each charge would be sufficient to cure any risk of prejudice.  *See Zafiro*, 506 U.S. at 539.  *See also United States v. Kennedy*, 743 F. App'x 649, 655 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1278, 203 L. Ed. 2d 290 (2019) (an instruction that "[i]t is your duty to *separately* consider the evidence that relates to each charge, and to return a separate verdict for each one" was sufficient to prevent prejudice).

### III.    Conclusion

For the foregoing reasons, the Court concludes defendants have failed to demonstrate severance in this case is warranted.  The motion of the Synergy Defendants for leave to join and

adopt the Smith Defendants' motion, [Docs. 129, 151], are **GRANTED**.  Defendants' Joint Motion

to Sever, [Doc. 128], is **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
_____
UNITED STATES DISTRICT JUDGE
