UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:18-CR-140 |
| | ) |
| ANDREW ASSAD, *et al.* | ) |

MEMORANDUM OPINION AND ORDER

On October 9, 2018, the United States of America filed a thirty-two-count indictment alleging Defendants conspired to commit healthcare fraud in violation of 18 U.S.C. § 1349, committed mail fraud in violation of 18 U.S.C. § 1341, and introduced misbranded drugs in interstate commerce with intent to defraud and mislead in violation of 21 U.S.C. §§ 331(a), 353(b)(1), and 333(a)(2). [Doc. 1].

On January 14, 2019, Defendants jointly moved to transfer the case from the Eastern District of Tennessee to the Middle District of Florida. [Docs. 83, 84]. The parties submitted briefs on the motion and United States Magistrate Judge Clifton L. Corker[1] issued an April 19, 2019 order denying Defendants' motion to transfer venue. [Doc. 124]. Defendants jointly appealed the Magistrate Judge's decision, [Docs. 135, 136], to which the Government responded, [Doc. 151]. A hearing was held on July 15, 2019. This appeal is currently before the Court.

---

[1] At the time the order, [Doc. 136], was written, the Honorable Clifton L. Corker was a United States Magistrate Judge for the Eastern District of Tennessee; presently, Judge Corker is a United States District Court Judge for the Eastern District of Tennessee after his July 18, 2019 confirmation by the Senate and his July 22, 2019 commission.

1

**I.     Background**

**A.**

The following synopsis summarizes the relevant allegations in the indictment that the Government eventually must prove beyond a reasonable doubt.

The October 9, 2018 indictment charged Defendants with conspiracy to commit health care fraud. Count One of the indictment alleges the Defendants conspired with the telemedicine company, HealthRight, LLC ("HealthRight"), and its owner, Scott Roix[2], to defraud health care benefit programs and pocket the proceeds. [Doc. 1 at ¶¶ 31-92]. The scheme allegedly involved prescription brokering, and the deception of both patients and doctors into requesting and prescribing certain medications that the Defendant pharmacies deemed particularly profitable. In submitting claims of reimbursement to the patients' insurance carriers through pharmacy benefit managers, the Defendant pharmacies allegedly misrepresented the purchase price of the medications by suggesting the prices were much higher than in reality. [*Id.* at ¶¶ 39-44]. The indictment alleges the Defendants profited from these misrepresentations and split the proceeds with the telemedicine company. [*Id.* at ¶¶ 45-66].

Counts Two through Thirty of the indictment allege specific acts of mail fraud in violation of 18 U.S.C. § 1341 directed to patients in the Eastern District of Tennessee. [*Id.* at ¶¶ 93-96]. Finally, Counts Thirty-One and Thirty-Two allege the introduction of misbranded prescription drugs into interstate commerce with the intent to defraud and mislead in violation of 21 U.S.C. §§ 331(a), 353(b)(1), and 333(a)(2). [*Id.* at ¶¶ 97-100].

---

[2] HealthRight, LLC, not a Defendant in this case, was a telemedicine company which schemed with the present defendants. [Doc. 1 at ¶¶ 10, 19, 32]. HealthRight and its owner, Scott Roix, were charged with various criminal offenses in this District. *See United States v. Scott Roix, and HealthRight, LLC*, No. 2:18-cr-133 (E.D. Tenn.). They have pled guilty and are awaiting sentencing.

All the individual Defendants are residents of Florida. The Defendant corporations are incorporated and located in the state of Florida with two exceptions: ERX Consultants, LLC, doing business as Zoetic Pharmacy, is located and incorporated in the state of Texas, and ULD Wholesale Group Inc. is organized under the laws of the state of Louisiana. [*Id.* at ¶¶ 7, 9]. Although HealthRight is not a defendant in this case, the Court notes the company is organized under the laws of the state of Delaware, but has locations both in Pennsylvania and Florida. [*Id.* at ¶ 10].

**B.**

In the April 19, 2019 order, the Magistrate Judge considered Defendants' request to transfer venue for convenience as permitted under Federal Rule of Criminal Procedure 21(b). [Doc. 124].

The Magistrate Judge reviewed the indictment and concluded that venue was proper in this District under Rule 21(a). [*Id.* at 3-5]. More particularly, the Magistrate Judge held that venue in the mail fraud counts are proper in this District as part of the mail fraud involved mailing Tennessee patients located in this District specific medications. [*Id.* at 4]. Similarly, the Magistrate Judge concluded that venue in this District was proper for the conspiracy offense, because overt acts were committed in the Eastern District of Tennessee when HealthRight obtained insurance information from Tennessee patients, and the signature of a Tennessee doctor, which permitted the Defendants to send medication to patients in this District and fraudulently bill for the medications prescribed to those patients. [*Id.* at 4-5]. Finally, as to the misbranding counts, the Magistrate Judge concluded venue was proper as the indictment alleged Defendants sent misbranded prescription drugs to Tennessee patients located in this District without a valid prescription of the practitioner. [*Id.* at 5].

Continuing to adhere to Rule 21, the Magistrate Judge then applied the ten-factor test to determine if a change of venue for convenience was appropriate. *See Platt v. Minnesota Mining*

*& Mfg. Co.*, 376 U.S. 240, 243-44 (1964). The Magistrate Judge found that the first and seventh factors, the Defendants' location and location of counsel, respectively, weighed in favor of transfer, as the both the former and the latter are all mostly located in Florida. The Magistrate Judge concluded that factor four, the location of documents and records likely to be involved, was neutral because of the ability to transfer the discovery into an electronic format. [Doc. 124 at 11]. Further, the Magistrate Judge found that factors two, location of possible witnesses, three, location of events likely to be in issue, five, disruption of Defendants' business, six, expense of the parties, eight, the relative accessibility of place of trial, and nine, docket condition of each district or division involved, did not weigh in favor of transfer. In regards to the tenth factor, any other special elements which might affect the transfer, the Magistrate found that it did not "warrant[] any particularly great weight." [*Id.* at 16]. Ultimately, after balancing the ten *Platt* factors, the Magistrate Judge found this case should not be transferred and should remain in this District. Defendants now challenge that decision.

## II.     Standard of Review

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. *See United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001) (citing *Gomez v. United States*, 490 U.S. 858, 869-70 (1989)); *see also Baker v. Peterson*, 67 Fed. App'x 308, 310 (6th Cir. 2003). Section 636(b) allows district court judges, subject to certain exceptions, to "designate a magistrate judge to hear and determine any pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A).

This Court will set aside Magistrate Judge orders on non-dispositive motions only if they are contrary to law or clearly erroneous. *See* Fed. R. Crim. P. 59(a). The clearly erroneous standard applies only to factual findings made by the Magistrate Judge, while legal conclusions

4

will be reviewed under the more lenient contrary to law standard. *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009) (internal quotation marks omitted). Under the clearly erroneous standard for findings of fact, the Court need only consider whether any evidence or showing exists to support the Magistrate Judge's finding and whether the finding was reasonable. *Tri-Star Airlines, Inc. v. Willis Careen Corp. of Los Angeles,* 75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999) (citations omitted). "When examining legal conclusions under the 'contrary to law' standard, the Court may overturn 'any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent.'" *Doe v. Aramark Educ. Res., Inc.*, 206 F.R.D. 459, 461 (M.D. Tenn. 2002) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir. 1994)); *see* 32 Am.Jur.2d Federal Courts § 140 (2018) ("A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure").

**III.     Analysis**

The Court considers Defendants' joint motion under Federal Rule of Criminal Procedure 21(b) to transfer venue from the Eastern District of Tennessee to the Middle District of Florida.

Article III of the Constitution provides: "Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed". U.S. Const. art. III § 2 cl. 3. The Sixth Amendment limits the geographic scope even further, by providing that the accused shall have a "trial, by an impartial jury of the State and district wherein the crime shall have been committed". U.S. Const. Amend. VI. Rule 18 provides, in pertinent part, that "the Government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. Defendants do not dispute the Eastern District of Tennessee is a proper venue for this criminal proceeding, rather,

5

the entirety of Defendants' argument is centered on the "[in]convenience of the parties" to litigate in this forum. Fed. R. Crim. P. 21(b).

**A. Transfer of Venue Under Federal Rule of Criminal Procedure 21(b)**

Under Rule 21, a court may transfer a criminal case to another district "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). The Sixth Circuit uses a ten-factor analysis to determine whether a venue transfer is appropriate:

> (1) the defendant's location; (2) the location of possible witnesses; (3) the location of events giving rise to the proceeding: (4) the location of relevant documents and records; (5) disruption of the defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Platt*, 376 U.S. at 243-44; *United States v. Micciche*, 165 Fed. App'x 379, 381 (6th Cir. 2006). No factor is dispositive, and the Defendants bear the burden of proving that prosecuting "the case in the district where the count was properly filed would result in a substantial balance of inconvenience to the defendant." *United States v. Ferguson*, 432 F. Supp. 2d 559, 564 (E.D. Va. 2006) (internal quotation marks omitted). Ultimately, the matter is one in the discretion of the trial court. *United States v. Tremont*, 351 F.2d 144, 146 (6th Cir. 1965).

Defendants argue that the Magistrate Judge improperly denied Defendants' motion to transfer venue to the Middle District of Florida based on the erroneous finding that the Defendants did not meet their burden in demonstrating that the *Platt* factors necessitate transfer. [Doc. 136 at 2]. In support, the Defendants contend that they are located in Florida, all their character and fact witnesses regarding the conspiracy are located in Florida, and finally, that all of the alleged events occurred in Florida. [*Id.*]. The Court now turns to the *Platt* factors.

### 1. Location of the Defendants

In considering the first factor, the Defendants' location, the Magistrate Judge found that it "obviously weigh[ed] in favor of transfer, all other things being equal." [Doc. 124 at 8]. The Magistrate Judge noted that all the individual Defendants are from Florida and most the corporate Defendants are incorporated in Florida. Defendants do not contest the Magistrate Judge conclusion of this factor. [Doc. 136 at 11].

Criminal Defendants have no Constitutional right to be tried in their home district. *Platt*, 376 U.S. at 245 ("Art. III, [§] 2, of the Constitution provides that 'The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . . .'"). Here, trial in Tennessee would require all the individual Defendants to travel some distance. Because Defendants' home "has no independent significance" and should be considered in connection with "such factors as the convenience of records, officers, personnel and counsel," *id.* at 245-46, this *Platt* factor, as the Magistrate Judge properly concluded, weighs in favor of transfer, and absent other countervailing considerations, the Court affords it minimal weight in its analysis.

### 2. Location of Possible Witnesses

As to the second *Platt* factor, location of possible witnesses, the Magistrate Judge found that the factor did "not weigh in favor of a transfer," reasoning that the "large number of witnesses in this case and the national scope of this conspiracy renders any location whether the East Tennessee or the Middle District of Florida to be convenient for some witnesses and inconvenient for others." [Doc. 124 at 9-10].

Defendants argue the Magistrate Judge improperly concluded that this factor does not support transfer. [Doc. 136 at 11-15]. Specifically, Defendants contend the Magistrate Judge failed to consider not only that the "most significant testimony at trial will likely be from Florida

7

witnesses," but also that "the vast majority of essential witnesses were also in that District." [*Id.* at 11]. After the July 15, 2019 hearing, the Defendants submitted a list of potential witnesses to the Court, which included pharmacy employees, telemedicine company employees, and character witnesses.

"Under Rule 21(b), the district court is to consider the convenience of the witnesses as well as the convenience of the parties." *United States v. Pry*, 625 F.2d 689, 691 (5th Cir. 1980); *see also United States v. Morris*, 176 F. Supp. 2d 668, 671 (N.D. Tex. 2001). Generally, a defendant is required to give "specific examples of witnesses' testimony and their inability to testify because of the location of the trial." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 456 (S.D.N.Y. 1997). "The court must rely on 'concrete demonstrations' of the proposed testimony." *United States v. Haley*, 504 F. Supp. 1124, 1126 (E.D. Pa. 1981).

The Court gives this factor the greatest weight. *See Ferguson*, 432 F. Supp. 2d at 564 (emphasizing importance of this factor; noting "location of potential witnesses will result in a substantial balance of inconvenience" because most reside in the transferee district); *United States v. McDonald*, 740 F. Supp. 757, 762 (D. Alaska 1990) (granting motion to change venue because "almost half of [the] witnesses reside" in the transferee district); *United States v. Hurwitz*, 573 F. Supp. 547, 552-55 (S.D.W.Va. 1983) (same); *cf. United States v. Acuna*, No. CRIM. 07-00615 SOM, 2008 WL 1722129, at *4 (D. Haw. Apr. 14, 2008) (denying motion in large part because a "majority of the Government's substantive witnesses" were within the original forum).

In two July 22, 2019 emails, the Defendants provided the court with potential witness lists. The lists consist largely of the corporate Defendants' former employees and the individual Defendants' character witnesses. For each witness, the lists identify where he or she worked, if applicable, his or her address, and phrases or terms as to the content to the potential witness's

8

testimony at trial. Defendants assert that all Defendants' employee witnesses are located in Florida. Moreover, Defendants argue that because all of the individual Defendants' "character witnesses are located in the Middle District of Florida [that] strongly favors transfer." [Doc. 126 at 13]. Defendants maintain that if this matter remains in Tennessee, their ability to call character witnesses to testify will be significantly hampered and, therefore, detrimental to their defense. [*Id.* at 14]. The Government does not rebut Defendants' showing that many potential witnesses live or work within the Middle District of Florida. However, the Government argues that the Defendants character witnesses' location does not necessitate transfer of venue when the witnesses will be fewer than the substantive witnesses and will likely be brief and subject to limited cross examination. [Doc. 151 at 6-7]. The Government further provides investigators, agents, and other Government witnesses are located in this District. [*Id.* at 6].

Other than describing their locations, Defendants do not sufficiently demonstrate inconvenience to any of their potential witnesses from having to travel to Eastern Tennessee for trial. Defendants merely argue that trial in this District would cause significant personal inconvenience for all of those possible witnesses because of the greater travel expense. However, travel expenses are not borne by the witness; they must be paid by the party calling the witness. "Generally, a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer. Rather a defendant must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial." *United States v. Offill*, No. 1:09-cr-134, 2009 WL 1649777, at *8 (E.D. Va. June 10, 2009) (citation omitted).

Despite Defendants' assertion, the overwhelming majority of witnesses who will likely be called to testify in this case are not located in Florida. The Government's indictment alleges a nationwide conspiracy, with overt acts occurring both in Florida and Tennessee. The indictment

9

also alleges twenty-nine separate instances of mail fraud, and two instances of misbranding of drugs, both of which allegedly occurred within this District. *See* [Doc. 1 at ¶¶ 93-100]. As such, the Government has provided information of thirty potential substantive witnesses in its case-in-chief located in this District. The Defendants have failed to demonstrate that most of the substantive witnesses who have personal knowledge of the facts of this case reside in the Tampa area.

The Court must also consider the potential inconvenience to the Government. *See United States v. Negron*, Cr. No. 08-501 (WHW), 2008 WL 5272056, at *9 (D.N.J. Dec. 15, 2008); *accord United States v. Almuntasser Habiu*, No. 1:12-CR-0301, 2013 WL 4698286, at *21 (M.D.Pa. Aug. 30, 2013). Undoubtedly, moving a prosecution to Florida would involve some inconvenience to the Government, specifically the transport of approximately thirty patient and doctor witnesses from this District. [Doc. 89].

Given that the Government's witnesses are in Tennessee and Defendants presented no concrete evidence of hardship to transport their witnesses to this District, the Court, on balance, does not find that maintaining the prosecution in its original forum would result in a substantial imbalance of inconvenience. Therefore, the Magistrate Judge did not err in holding that this factor did not weigh in favor of transfer.

### 3. Location of events likely to be in issue

In regards to the third factor, location of events likely to be in issue, the Magistrate Judge concluded this factor did not favor transfer to the Middle District of Florida, because the indictment alleges the effects of the Defendants' alleged fraud were far reaching and significantly impacted East Tennessee. [Doc. 124 at 10-11].

Defendants argue the Magistrate Judge erred in determining that the factor did not weigh in favor of transfer. [Doc. 136 at 15]. Defendants contend transfer is necessitated as the majority of the events related to Defendants' alleged conspiracy took place at the "nerve center" of the conspiracy, in Tampa, Florida. [Doc. 136 at 16].

In *United States v. Miller*, 314 F.R.D. 574 (S.D. Ohio 2016), the Court granted the defendants' motions to transfer venue pursuant to Rule 21(b) to the Northern District of California. There, the three defendants were charged in a twelve-count indictment with conspiracy to commit mail and wire fraud, conspiracy to engage in unlicensed wholesale distribution of drugs and false statements, and mail fraud. *Id.* at 576. Eight days before the Southern District of Ohio indictment, the *Miller* defendants were indicted with thirty other individuals in the Northern District of California. The Court found that the charges brought against the defendants in California generally encompassed the conduct charged in Ohio, but the Ohio indictment appeared to address Ohio-specific conduct, but which arose out of the overall scheme at the heart of the California indictment. *Id.* In order to avoid piecemeal prosecution of individual conduct, the Court held that the most logical approach would be to center the prosecution to one location around the "nerve center" of the conspiracy, located in Northern California. *Id.* at 578. As a result, the case was then transferred out from the Southern District of Ohio.

The reasoning behind the "nerve center" approach as outlined in *Miller* is inapplicable here. The *Miller* Court transferred the case in order to center and consolidate the prosecution of the two cases in one location. In such circumstances, the Court found that the single location of prosecution would be the "nerve center" of the conspiracy. The Court's decision is further bolstered by the fact that there was already an ongoing related proceeding in that jurisdiction. In the present case, there is no potential for divergent prosecutions as no other location-specific

11

prosecution related to this case exists. Instead, the only other related prosecution of this conspiracy is located in this District. Transferring this case based on the "nerve center" analysis to avoid piecemeal conspiracy prosecutions and to streamline related proceedings is not warranted in this present case. As such, the Magistrate Judge did not err in not relying on the "nerve center" metaphor.

In his order, the Magistrate Judge found that "the gravity of the fraud was not in any way limited" to Florida. [Doc. 124 at 10-11]. Defendants argue that the Magistrate Judge improperly interpreted the *Ashland Oil* decision and incorrectly applied its "center of gravity" metaphor. [Doc. 136 at 17-18].

In *United States v. Ashland Oil, Inc.*, 457 F. Supp. 661, 664 (W.D.Ky. 1978), the Court denied a Rule 21(b) motion finding that the defendant failed to meet his burden to warrant a transfer of jurisdiction. In regards to the third *Platt* factor, the *Ashland Oil* Court found that the conspiracy alleged in the indictment occurred principally in Minnesota; however, the offense charged a nationwide conspiracy specifically involving multiple corporations whose activities were conducted in many locations, including in the Western District of Kentucky. There, the Court reasoned that the impact of the alleged conspiratorial activities affected customers throughout the United States, and therefore, it could not be said that the center of gravity of the events laid in Minnesota.

The Court acknowledges that relevant events likely occurred in Florida. However, the Court agrees with the Government and the *Ashland Oil* decision that the conduct of all alleged conspirators must be considered in determining the location of events likely to be at issue. The alleged conspiracy involved the nationwide shipping of medication from various pharmacies located in the greater Tampa area, as well as one pharmacy located in Texas. The indictment

alleges that overt acts occurred in various locations, including in the Eastern District of Tennessee. Given this, the location of the events at issue is not limited to Tampa. The Magistrate Judge correctly determined that the alleged actions occurred not just in Florida. *See Untied States v. Coffee*, 113 F. Supp. 2d 751, 755-56 (E.D.Pa. 2000) (Where a defendant's actions occurred is relevant to this factor.). Therefore "it cannot be said that the center of gravity of the events lies in" Florida. *Ashland Oil, Inc.*, 457 F. Supp. at 664. Accordingly, the Magistrate Judge properly concluded that this factor does not favor transfer.

### 4. Location of Documents and Records

According to the parties, the evidence in this case is in electronic format, and can be accessed from any location. Defendants do not object to the Magistrate Judge's conclusion that this factor is neutral in the analysis.

### 5. Disruption of Defendants' Business

The Magistrate Judge found that the fifth *Platt* factor, disruption of Defendants' business, did not favor transfer; the Magistrate Judge noted that trial would cause disruptions notwithstanding the trial location, and the employed Defendants had not identified any additional burdens that would necessitate a transfer. [Doc. 124 at 11-12].

Defendants first challenge the Magistrate Judge determination that this factor did "not weigh in the[] favor" of the unemployed Defendants, Assad, Palso, and Bolos. [Doc. 124 at 12]. *See* [Doc. 136 at 19]. Because "[t]here is no potential for disruption of [a] defendant's business because [a] defendant is unemployed," *United States v. Negron*, 2008 WL 5272056, at *4, the Magistrate Judge properly concluded this factor did not weigh in favor of the unemployed Defendants.

13

Defendants also challenge the Magistrate Judge finding in regards to Defendant Smith. Defendant Smith represents that he manages two businesses, Smith Capital and Fresh Technologies, and is the sole provider for his family. [Doc. 84-1]. Defendant Smith argues that any absence of himself from their business will be financially difficult for him and his family. [Doc. 136 at 19-21].

Any criminal case is likely to disrupt a defendant's business. *See United States v. Avenatti*, No. 19 Cr. 374 (DAB), 2019 WL 4640232, at *10 (S.D.N.Y. Sept. 24, 2019) ("While loss of business is a factor favoring transfer, . . . a criminal trial invariably imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities.") (quoting *United States v. Coriaty*, No. 99 Cr. 1251 (DAB), 2000 WL 1099920, at *9 (S.D.N.Y. Aug. 7, 2000)). In a criminal trial, where a defendant must be present every day in court, any location is undoubtedly bound to cause some significant interference with business.

On appeal, Defendant Smith has not provided further specifics regarding the businesses he manages. Moreover, Defendant Smith has failed to identify particular matters that require his presence in Tampa. However, Defendant Smith has represented that he is "the only person who can manage [the businesses]." [Doc. 84-1]. Based on the record, the Court is not convinced that Defendant Smith's businesses would be greatly impacted as he represents; nevertheless, the Court recognizes being thousands of miles away from his business will unquestionably have an adverse effect on each of businesses. Accordingly, the Court concludes that the disruptive impact upon Defendant Smith's businesses by having a trial in this District only slightly favors transfer.

In the aggregate, this factor is neutral. As previously stated, Defendants Assad, Bolos, and Palso will not suffer a disruption. However, Defendant Smith will suffer a slight disruption by the

nature of attending trial hundreds of miles away from Tampa resulting in a lack of personal involvement in his businesses.

### 6. Expense to the parties

Defendants challenge the Magistrate Judge finding that the sixth factor, expense of the parties, did not favor transfer. [Doc. 136 at 22-24]. The Magistrate Judge concluded the Defendants had not shown they would be prejudiced because they cannot afford to fund the expenses associated with this trial in this District. [Doc. 124 at 13-14].

Defendants have the burden to pay for their trial expenses. It is true the expense to the Defendants would be greater should the proceedings be held in this District, and there is no doubt that the expenses of transporting the Defendants, their attorneys, and their witnesses to this District, and of maintaining them once here for a multi-week trial, will be substantial. *See United States v. Shoss*, 523 Fed. Appx. 713, 716 (11th Cir. 2013) (holding that the defendant's "concern about the cost of his 'daily subsistence' while being tried in a district other than his own was of little relevance to the choice of venue."); *cf. United States v. Jessup*, 38 F.R.D. 42, 56-57 (M.D. Tenn. 1965) (Although a defendant is financially well-off, a defendant's financial means are not a controlling element in assessing this factor).

The majority of the Government's witnesses reside in this District, and accordingly, they will have a shorter commute. If this case were to be reassigned to the Middle District of Florida, it appears the Government would incur significant expenses transporting and maintaining counsel, support staff and witnesses for the duration of the trial. The showing that the Defendants have made with respect to these costs does not demonstrate a "considerably greater" burden. *See Jessup* 28 F.R.D. at 47. Since *Platt* explicitly calls for courts to consider the "expenses to the *parties*,"

376 U.S. at 244 (emphasis added), rather than the "expense to the *defendants*," it is not inappropriate to focus on Defendants' financial means when there is no clear evidence that transfer would result in lower total litigation costs for the parties. A criminal trial is expensive for those involved, regardless of where it is held, but in light of the location of the witnesses, Defendants, and their counsel, on the whole, it would be equally as expensive to move this trial out of the Eastern District of Tennessee. Although, this factor is close, it marginally favors keeping the trial in this District. Therefore, the Magistrate Judge did not err in concluding that the expense to the parties does not weigh in favor of transferring the venue to Florida.

### 7. Location of counsel

The Magistrate Judge concluded that the seventh *Platt* factor, location of counsel, favored transfer, "but only slightly," because the Defendants have retained counsel with nationwide practices based out of Tampa, Florida. [Doc. 124 at 15]. Defendants challenge the Magistrate Judge's conclusion that this factor should be weighted in Defendants' favor more than just slightly, because inconvenience to the Government attorneys is not a part of this factor's consideration. [Doc. 136 at 24-25].

Each Defendant has retained counsel located in Tampa, which weighs in favor of transfer. Defendant Bolos has also retained a Knoxville-based lawyer. Moreover, a defense counsel's residence outside of a district "is an inconvenience of [a defendant's] own choosing. No claim is made, or can be made, that competent and experienced counsel cannot be found in this district." *United States v. Lindh*, 212 F. Supp. 2d 541, 552 (E.D.Va. 2002). "In an era when lawyers routinely practice and try cases all over America, we give little weight to whatever inconvenience this particular [attorney] may suffer for spending a few weeks" in another district. *Coffee*, 113 F. Supp. 2d at 758. Thus, defense counsels' location does favor transfer, but only slightly.

16

### 8. Relative accessibility of place of trial

As to the eighth *Platt* factor, the relative accessibility of place of trial, the Magistrate Judge determined this factor did not favor transfer, because the federal courthouse in not is a remote location. [Doc. 124 at 15]. Greeneville, Tennessee is located within driving distance to the Tri-Cities, Knoxville, and Asheville airports, all of which provide non-stop flights to airports located within the greater Tampa area. *See, e.g., United States v. U.S. Steel Corp.*, 233 F. Supp. 154, 158 (S.D.N.Y. 1964) (noting that "[t]he efficiency of modern air transportation" attenuates accessibility concerns). Accordingly, the Magistrate Judge correctly concluded that this factor does not favor transfer.

### 9. Docket conditions

During the July 2019 hearing, the parties agreed that this is a neutral factor between this courthouse and that in Tampa, Florida. This factor is neutral and shall not be discussed any further.

### 10. Special elements

"[T]he tenth factor announced in *Platt* is a catch-all designed to make clear that the first nine are not exhaustive and that courts considering transfer motions must always consider whether the case presents 'any other special elements' that might affect the transfer analysis." *United States v. Smith,* 293 F. Supp. 2d 631, 641 (E.D.Va. 2003) (citing *Platt,* 376 U.S. at 244). The Magistrate Judge decided that the tenth *Platt* factor did not "warrant[] any particularly great weight." [Doc. 124 at 16].

Defendants challenge the Magistrate Judge's conclusion that an impaneled jury in this District would be able to follow the law provided by the Court, including instruction on any Florida specific statutes. [Doc. 136 at 27]. The Government counters that federal courts commonly instruct juries on state specific law, notably in civil diversity jurisdiction cases; however, the

Government maintains that it has provided the state statutes to demonstrate knowledge, motive, or intent and reiterates that the Government is not pursuing charges based on Florida law, and therefore is not asking a Tennessee jury to interpret Florida law. [Doc. 151 at 25]. The Court agrees with the Magistrate Judge position that this factor does not warrant particularly great weight and that this Court will be able to properly instruct a jury on the law with input from both the Government and the Defendants.

In considering and weighing all of the *Platt* factors, and informed by the general rule that a criminal action should remain in its original forum, the Court finds that Defendants have failed to persuade the Court that the factors in their favor outweigh those proffered by the Government in support of keeping this prosecution in the Eastern District of Tennessee. In reviewing the particular facts of this case, the Court concludes that the Defendants have failed to establish that transfer is "in the interest of justice." Accordingly, the Defendants' objections to the Magistrate Judge's order are OVERRULED.

**IV.     Conclusion**

For the foregoing reasons, the Court concludes Defendants have failed to demonstrate transfer in this case is warranted under Rule 21(b). Accordingly, Defendants' Joint Appeal of the Magistrate Judge decision denying Defendants' Motion to Transfer Venue, [Doc. 136], is **OVERRULED**, and Defendants' Motions to Transfer Venue, [Doc. 83, 84], are **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE