UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) No. 2:18-CR-140 |
| | ) |
| ANDREW ASSAD, *et al.* | ) |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on the government's Motion for Judicial Inquiry into Possible Conflicts of Interest, [Doc. 208]. The defendants have responded in opposition, [Docs. 216, 217]. A video hearing was held on October 30, 2020. [*See* Doc. 250]. The matter is ripe for review.

I. **Background**

The eleven defendants are pharmacists, pharmacies, wholesalers, or managers who operated pharmacies. Defendants were charged by the grand jury in an October 9, 2018 indictment. [Doc. 1]. Count One alleges defendants conspired with each other, HealthRight, Scott Roix[1], and other persons and entities known to the grand jury to commit health care fraud in violation of 18 U.S.C. § 1349. [*Id.* at 1-36]. Counts Two to Thirty allege defendants committed mail fraud in violation of 18 U.S.C. § 1341. [*Id.* at 36-39]. Finally, Counts Thirty-One and Thirty-Two allege defendants introduced misbranded drugs in interstate commerce with the intent to defraud and mislead in violation of 21 U.S.C. §§ 331(a), 353(b)(1), and 333(a)(2). [*Id.* at 39-40].

After the indictment, Gregory Kehoe and Danielle Kemp of the law firm Greenberg Traurig, P.A. began representing Defendant Larry Everett Smith. [Doc. 28]. Kehoe and Kemp also represent Smith in

---

[1] HealthRight, LLC, not a defendant in this case, was a telemedicine company which allegedly schemed with the present defendants. [Doc. 1 at ¶¶ 10, 19]. HealthRight and its owner, Scott Roix, were charged with various criminal offenses in this district. *See United States v. Scott Roix, and Healthright, LLC*, No. 2:18-cr-133 (E.D. Tenn.). They have pled guilty and are awaiting sentencing.

1

an ongoing False Claims Act civil lawsuit, *United States ex rel. Silva v. Vici Marketing, LLC, et. al*, in the Middle District of Florida[2]. [*See* Docs. 208, 243].

During discovery in the civil case, Kehoe and Kemp represented Tesha Magazino and Dorothy Vinson at their respective depositions in their capacity as former employees of Oldsmar Pharmacy[3] ("Oldsmar"), a now defunct business managed by Smith. [Doc. 243]. Magazino was also deposed in her capacity as the corporate representative for Oldsmar. In the course of that representation, Kehoe and Kemp met with the witnesses multiple times to prepare for their depositions.

In this present matter, corporate defendants Alpha-Omega Pharmacy, LLC ("Alpha-Omega"), Germaine Pharmacy, Inc. ("Germaine"), and ERX Consultants, LLC *d/b/a* Zoetic Pharmacy ("Zoetic") retained Dale R. Sisco and Dominic Isgro of the Sisco-Law law firm. [Doc. 29].

Sisco and Isgro previously represented Magazino and Vinson during proffer interviews with federal agents related to the investigation in this case. The attorneys also previously represented Kirk Carruthers, Bryan Holmes, and Scott Courtney, the owners of Zoetic, Alpha-Omega and Germaine, during the proffer interviews with law enforcement during this case.

**II. Analysis**

On March 16, 2020, the government filed a pretrial motion for judicial inquiry to determine if a conflict of interest exists in the representation of some defendants and and their retained counsel. [Doc. 208]. Despite their contention, the government does not seek to disqualify[4] attorneys, Kehoe, Kemp, Sisco, or Isgro from their representation of the defendants in this case. [*Id.* at 4].

The government first contends that Kehoe and Kemps' previous representation of Vinson and Magazino in a related civil case poses conflicts of interest. The government asserts that Magazino and

---

[2] Counsel has informed the Court that the civil case is stayed pending the resolution of this case. [Doc. 243].
[3] Oldsmar Pharmacy is not a defendant in the present case.
[4] The Court notes that the Sixth Circuit has provided a three-part test to determine if disqualification is appropriate, which looks at whether: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990). In this case, government has not moved for disqualification. As such, the Court does not discuss it.

2

Vinson are material witnesses who the government plans to call to testify against Smith. [*Id.* at 3]. The government maintains Magazino and Vinson have first-hand knowledge as to the business and compliance practices of not only Oldsmar but also to Alpha-Omega, Zoetic, and Germaine, the latter all of which are defendants in this present case. The government contends that Magazino and Vinson each have previously provided statements against Smith during their depositions. [*Id.*]. The government reasonably believes the confidential information the witnesses shared with Kehoe and Kemp during the course of the representation would impede their ability to cross examine the witnesses on Smith's behalf.

Second, the government contends that Sisco and Isgros' previous representation of Magazino and Vinson during proffer interviews creates a conflict of interest. The government asserts that the attorneys most likely "obtained confidential information from Magazino or Vinson regarding the business operations of Alpha-Omega, Germaine, and Zoetic." [*Id.* at 27]. The government contends that the duties the attorneys have to their former clients would hinder any effective cross-examination on their current clients' behalf. Moreover, the government argues Sisco and Isgros' representation of Carruthers, Holmes, and Courtney during their proffer interviews taken in the course of this investigation creates another conflict of interest. [*Id.* at 26]. The government reasons that if the testimony at trial is consistent with the interviews given to law enforcement, the testimony would directly incriminate Alpha-Omega, Germaine, and Zoetic, specifically that "Smith had *de facto* control" of the defendant pharmacies' business and compliance operations. [*Id.*]. The government asserts this testimony would create a conflict of interest because the the confidential information the witnesses shared with Sisco and Isgro during the representation would hinder cross-examination of the witnesses on the defendant pharmacies' behalf.

The Sixth Amendment assures that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. A criminal defendant presumptively has the constitutional right to retained counsel of his or her choice. *Wheat v. United States*, 486 U.S. 153 (1988). However, "the essential aim of the Amendment is to guarantee an effective advocate for each defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* at 159. The presumption may be "overcome" by a "demonstration of actual conflict" or

3

"by a showing of a serious potential for conflict." *Id.* at 164; *accord United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993); *see also Wood v. Georgia*, 450 U.S. at 261 (1981) (right to conflict-free counsel is "correlative right").

A conflict actually exists "when the attorney's and the defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action,' or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *Jones*, 381 F.3d at 119 (quotation omitted). "An attorney has a potential conflict of interest if the interests of the defendant *could* place the attorney under inconsistent duties in the future." *Id.* In either situation, the Court *may* reject an otherwise valid waiver of the Sixth Amendment right to conflict-free counsel. *Wheat*, 486 U.S. at 163-64. "A defendant enjoys a presumption in favor of counsel of choice, but such a presumption may be overcome because such a choice must be balanced with the court's interest in the integrity of the proceedings and the public's interest in the proper administration of justice." *United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008) (internal quotation marks omitted). "In situations where a potential conflict of interest may arise, the court's interest in the integrity of the proceedings may trump the defendant's choice." *Id.* When a trial court is alerted to a defense attorney's possible conflict of interest, it must take steps to ascertain whether a change of counsel is warranted, even if both client and counsel maintain that no issue exists. *Wheat,* 486 U.S. at 160; *see also Wood*, 450 U.S. at 272-73; *Leonard v. Warden*, 846 F.3d 832, 844 (6th Cir. 2017). "A district court has broad discretion to remove counsel for a potential conflict, even if the defendant wishes to waive the conflict." *United States v. Matsa*, 540 F. App'x 520, 523 (6th Cir. 2013).

### A. Kehoe and Kemp

Smith maintains the conflict is waivable and a valid waiver has been signed. The Sixth Circuit has clarified the Court's task in regard to a defendant's waiver of conflict-free counsel :

> [i]n general, in deciding whether to accept a defendant's waiver of conflict-free counsel, a district court must determine (i) whether the defendant's waiver is sufficient and (ii) whether the conflict is of a type which can be waived. Th first inquiry focuses on the specific defendant before the district court. The second inquiry focuses on the integrity of the judicial system generally.

4

*United States v. Cardin*, 577 F. App'x 546, 552 (6th Cir. 2014). "The district court is to be given wide latitude in making such determinations [regarding waivers of conflicts of interest] and a decision will be upheld unless arbitrary or without adequate reasons." *Swafford*, 512 F.3d at 839 (internal quotation marks omitted); *Wheat*, 486 U.S. at 163 ("[T]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest . . . in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.").

   1. **Waiver**

A defendant may make a knowing, intelligent, and voluntary waiver of his right to conflict-free counsel. *Wheat*, 486 U.S. at 163. *See Jones*, 381 F.3d at 117-20 (a court may accept a valid waiver of conflict-free counsel where only potential conflict exists). "This court must honor such waivers 'in the absence of compelling circumstances.'" *United States v. Davis*, 490 F.3d 541, 548 (6th Cir. 2007) (quoting *United States v. Reese*, 699 F.2d 803, 805 (6th Cir. 1983)). To assess the validity of a waiver of the right to conflict-free counsel, the Second Circuit established the now venerated procedure: (1) advise of right to conflict-free counsel; (2) instruct as to dangers; (3) permit conference with chosen counsel; (4) encourage independent advice; (5) allow reasonable time for decision; and (6) engage in narrative colloquy to ensure that defendant understands risks and freely chooses to run them. *United States v. Rodriguez*, 968 F.2d 130, 138-39 (2d Cir. 1992). *See United States v. Curcio*, 680 F.2d 881, 887 (2d Cir. 1982).

Kehoe and Kemp previously represented Magazino and Vinson in a civil proceeding and developed an attorney-client relationship with both witnesses. At the hearing on this motion, Kehoe and Kemp informed the Court they are no longer representing either Magazino or Vinson. As such, this is a "successive representation case." *Moss v. United States*, 323 F.3d 445, 459 (6th Cir. 2003).

This Court has adopted the Tennessee Rules of Professional Conduct adopted by the Tennessee Supreme Court insofar as they relate to matters within the jurisdiction of the Court. E.D. Tenn. Local R. 83.6 (2020). The Court applies the Tennessee Rules of Professional Conduct. Rule 1.9 addresses conflicts of interests with former clients, and states in relevant part that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter

5

in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Tenn. Sup. Ct. R. 8, RPC 1.9(a). Under the rule, "informed consent" denotes an agreement to a proposed course of conduct "after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternates." Tenn. Sup. Ct. R. 8, RPC 1.0(e).

The Court has been provided with copies of consent waivers signed by the two former clients and Smith. [*See generally* Doc. 243]. The waivers detailed the attorneys' previous representation of Magazino and Vinson and the potential conflict it presents with their current representation of Smith under the ethics rules. The waivers explained the possible situation that could arise during cross-examination that would place either Magazino or Vinson's interests adverse to Smith's interests. The waivers informed the witnesses and Smith of their right to seek and discuss the waiver with independent counsel before signing it. Moreover, the waivers indicated to the signatories of the possibility that conflict-free counsel from a separate firm could conduct the cross-examination. [*Id.*]. The Court finds that the waivers' explanations and disclosures of the potential material risks of Kehoe or Kemp conducting the cross-examinations of Vinson and Magazino at Smith's trial and the available alternative options available demonstrate that Kehoe and Kemp adequately informed their client and former clients of the material advantages and disadvantages of the proposed course of conduct. The Court finds the contents of the waivers reasonably ensure Smith made an informed decision to accept their continued representation. Moreover, the Court finds the contents of the waivers adequately communicate to Vinson and Magazino the information required for them to make an informed decision to sign the consent waiver and not retain independent counsel. Accordingly, Kehoe and Kemp have sufficiently obtained informed consent from all the individuals signing the waivers. *See* Tenn. Sup. Ct. R. 8, RPC 1.0(e) cmt. 7 (informed consent "usually requires an affirmative response by the client or the other person . . . confirmed in writing."). As such, the waivers satisfy the requirements set forth in Tennessee Rule of Professional Conduct 1.9(a). [Doc. 243].

Further, at the October 30, 2020 hearing, the Court discussed on the record the potential conflicts and then asked Smith about his willingness to waive any actual or potential conflicts. Kehoe and Kemp

represented that they had discussed with Smith the potential conflicts and consequences that could arise as a result of their prior representation of the two prospective trial witnesses. Both Kehoe and Kemp advised that they can ethically represent, and are ethically representing, Smith. On the record, Smith professed he understood the possible conflicts, and that he is aware of the issues that potentially may arise at trial. Accordingly based on its review of the waivers on the record and the representations at the hearing, the Court finds that Smith did knowingly, intelligently, and voluntarily seek to waive his right to conflict-free counsel.

### 2. Acceptance or Rejection of the Waivers

A Court is not obligated to accept a defendant's waiver. Unlike the mythological Cassandra, the Court cannot precisely predict all the conflicts of interest that will arise. As the Supreme Court has eloquently explained: "[u]nfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Wheat*, 486 U.S. at 162.

In this case of successive representation, the Court analyzes Smith's right to the counsel of his choice against the duty of loyalty Kehoe and Kemp owe to their former clients, Magazino and Vinson. *See Moss*, 323 F.3d at 460. "The fear in successive representation cases is that the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing privileged information." *Id. See Wheat*, 486 U.S. at 156 (noting limits on questioning witness that would prevent cross-examination "in any meaningful way"). It is worth noting that "[t]he lawyer's duty of loyalty survives the termination of the former representation to the extent that it precludes the lawyer from acting to deprive the former client of the benefit of the lawyer's prior work on the former client's behalf." Tenn. Sup. Ct. R. 8, RPC 1.9(a) cmt 3a.

The Court looks to both state ethical rules and federal standards in assessing whether or not a conflict exists or may surface. With regard to former clients, Tennessee Rule of Professional Conduct

7

1.9(a) forbids representation "in the same or a substantially related matter" in which a client's "interests are materially adverse to the interests of the former client."

Under the rule, matters are "substantially related . . . if there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter, unless that information has become generally known." (Tenn. Sup. Ct. R. 8, RPC 1.9, cmt 3). There is no question that the two matters involve "the same basic issues, facts, and time period." *United States v. Bussell*, No. 10-CR-159, 2012 WL 32639, at *5 (E.D. Tenn. Jan. 6, 2012).

Here, the indictment alleges that beginning around June 2015 and continuing through on or about April 2018, defendants knowingly and willfully engaged in a scheme to fraudulently bill Medicare, Medicaid, TRICARE, FECA, FEHBP, and private insurance carriers for in exchange for kickbacks and bribes. [Doc. 1 at ¶¶ 32, 33]. According to the indictment, defendants executed the conspiracy by scheming with the telemedicine company, HealthRight, to deceive doctors to prescribe certain medications that the defendant pharmacies found to be the most profitable. [*Id.* at ¶¶ 32, 34-38]. The telemedicine company orchestrated the fraud by allegedly selling these prescriptions with profitable drugs to the defendant pharmacies. [*Id.* at ¶¶ 34-38]. Afterwards, in submitting a claim of reimbursement to the patients' insurance carriers through pharmacy benefit managers, the defendant pharmacies allegedly misrepresented their purchase price of the medications, suggesting it was close to the average whole price, when in reality, the purchase price was much lower. [*Id.* at ¶¶ 39-44]. Defendants allegedly profited from the misrepresentation and split the proceeds with the telemedicine company. [*Id.* at ¶¶ 45-66].

The civil *qui tam* lawsuit concerns itself with the dealings of Oldsmar Pharmacy and Vici Marketing, the predecessor of HealthRight, the telemedicine company at the center of the alleged conspiracy in this case. Before Oldsmar's operations ceased in February, 2015, Vinson and Magazino worked for Oldsmar, one business in the network of pharmacies managed by Smith. The civil case alleges that Oldsmar entered into "marketing" agreements with Roix's business. The agreements allegedly involved the exchange of money for prescriptions.

8

Magazino and Vinson both worked at Oldsmar and at least one other Smith-managed pharmacy during and immediately following the termination of their employment at Oldsmar. Vinson worked as the pharmacist-in-charge at Oldsmar and as a senior level pharmacist at one of the defendant-pharmacies. Magazino worked as the director of operations at Oldsmar and then held the same title at another defendant-pharmacy. In her professional role, Magazino had knowledge of the business practices of both pharmacies and the alleged marketing agreements entered into with Roix's businesses. Vinson had direct knowledge of pharmacy operations and compliance practices of the businesses. The Court finds that the fact that the allegations in the two cases allege a similar pattern of activity during a consistent time period renders them substantially related for the purposes of Rule 1.9(a).

It is likely Vinson and Magazino discussed the details of their employment and the business practices at the Smith-managed pharmacies with Kehoe and Kemp during the course of the attorney-client relationship. Although Vinson and Magazino might have provided the same or similar information to the government during their depositions and interviews, "[t]he privilege attaches not to the information but to the communication of the information." *United States v. Cunningham*, 672 F.2d 1064, 1073 n.8 (2d Cir. 1981). There is also "a substantial risk" that more detailed confidential information other than what is general knowledge had been shared with Kehoe and Kemp during the course of their representation. Tenn. Sup. Ct. R. 8, RPC 1.9, cmt 3.

Further, at trial there is a probability that the former clients' interests could be materially adverse to Smith's interests. Both Magazino and Vinson's trial testimony has the potential to be incriminatory of Smith, and if that were to occur, Kehoe and Kemp would be ethically constricted from engaging in any "meaningful" cross-examination on the issue for fear of divulging any confidences from their previous representation or from potentially incriminating their former client. *See Moss*, 323 F.3d at 460.

Based on its review of the parties' briefs and exhibits, the arguments of counsel during the hearing and the evidence presented, the Court finds that there is at least potential conflict of interests under Tennessee Rule of Professional Conduct 1.9(a). Successive representation is permitted with informed

9

consent. The Court finds the potential ethical conflicts were properly waived, and the Court accepts the waivers.

### B. Sisco-Law

#### 1. Magazino, Vinson, and Holmes

Sisco-Law represented Magazino, Vinson and Holmes in their proffer interviews with federal agents during the investigation of the present matter. [Doc. 208 at 4]. At the hearing on this motion, Sisco informed the Court his firm is no longer representing either Magazino, Holmes, or Vinson but only represents Alpha-Omega, Germaine, and Zoetic. The Court notes this is another "successive representation" situation subject to the requirements of Rule 1.9. *Moss*, 323 F.3d at 459. *See* Tenn. Sup. Ct. R. 8, RPC 1.9.

Under Rule 1.9 "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Tenn. Sup. Ct. R. 8, RPC 1.9(a). It is undisputed that Sisco-law represented Magazino, Holmes, and Vinson as part of this present matter. Further, the Court notes that no waiver was provided on the record[5]. Therefore, the analysis focuses on the whether or not the former clients' interests are materially adverse to the interests to Sisco-Law's current clients. The proffer interviews were not in the record. Without the relevant information, the Court cannot properly assess if the witnesses' potential trial testimonies would be "materially adverse" to Sisco-Law's current clients. *See Wheat*, 486 U.S. at 156 (noting limits on questioning witness that would prevent cross-examination "in any meaningful way").

The Court does, however, note that several federal courts have also approved the use of local counsel or co-counsel to cross-examine former clients of primary counsel as an effective and appropriate cure of any potential conflict and/or to safeguard against the misuse of the client's confidential information.

---

[5] Counsel asserts there are signed waivers, but they have not been provided for the Court's review. Without the waivers the Court cannot determine if there is informed consent. *See* Tenn. Sup. Ct. R. 8, RPC 1.0(e) (defining the term "informed consent").

10

*See Sykes v. Matter*, 316 F. Supp. 2d 630, 636 (M.D. Tenn. 2004) (holding that the Rule 1.9 conflict was resolved by the use of conflicts counsel because "there is no risk to either client if outside counsel is retained to conduct the deposition [of the former client] and his examination at trial, if necessary."); *In re Motion to Quash Deposition Subpoena to Lance Wagar,* No. 1:06-MC-127, 2006 WL 3699544, *9 (N.D.N.Y. 2006) (having co-counsel conduct the deposition of a subpoenaed third-party witness, who was also a former client of the main defense counsel, is an "efficacious safeguard" against any potential misuse of confidential information acquired in the prior representation).

### 2. Carruthers and Courtney

The government argues Sisco-Law's representation of Carruthers and Courtney in proffer interviews during the investigation of this case present a potential conflict of interest if Carruthers and Courtney were to testify at trial against Sisco-Law's current clients. [Docs. 241-5, 241-6]. It is undisputed that Sisco represented Carruthers and Courtney during an interview directly relating to this case and is no longer representing either individual. Tennessee Rule of Professional Conduct 1.9(a) once again controls and forbids representation "in the same or a substantially related matter" in which a client's "interests are materially adverse to the interests of the former client." Counsel has not provided the Court with a written waiver[6].

The analysis turns on whether or not Carruthers and Courtneys' interests are materially adverse to Sisco-Law's current clients, notably, Zoetic and Germaine Pharmacies. Carruthers' proffer interview summary includes assertions that have the potential to incriminate Zoetic at trial, specifically about the company's specific business practices and management as well as contacts and contracts with other entities. [*See* Doc. 241-6]. Likewise, Courtney's proffer interview summary includes statements made by Courtney that would incriminate Germaine, specifically about its business plans and management. [*See* Doc. 241-5]. Sisco would then be limited during cross-examination of the two potential witnesses "for fear of revealing or misusing privileged information" or incriminating his former client. *Moss*, 323 F.3d at 460. *See* Tenn.

---

[6] Counsel asserts there are signed waivers, but they have not been provided for the Court's review. *See* Tenn. Sup. Ct. R. 8, RPC 1.0(e) (defining the term "informed consent").

11

Sup. Ct. R. 8, RPC 1.9(a) cmt 3a ("[t]he lawyer's duty of loyalty survives the termination of the former representation to the extent that it precludes the lawyer from acting to deprive the former client of the benefit of the lawyer's prior work on the former client's behalf.").

Based on the evidence presented, the Court concludes a potential conflict of interest exists between Germaine and Zoetic's retained counsel and their former clients Courtney and Carruthers. The Court holds the potential conflict is waivable under Rule 1.9(a) but has not been properly waived in this case. *See* Tenn. Sup. Ct. R. 8, RPC 1.9. However, the Court does not preclude the use of conflict-free counsel to cross-examine Carruthers or Courtney during trial on matters related to Zoetic and Germaine. *See Sykes*, 316 F. Supp. 2d at 636 ("there is no risk to either client if outside counsel is retained to conduct [cross-]examination at trial, if necessary.").

### III. Conclusion

For the foregoing reasons, the Court concludes the government's Motion for Judicial Inquiry into Possible Conflicts of Interest, [Doc. 208], is **GRANTED**.

The Court has made a judicial determination that a potential conflict of interest exists between Smith's retained counsel and their duties to their two former clients. The Court concludes the potential conflicts of interest are waivable; Kehoe and Kemp properly obtained waivers from Smith and the two potential witnesses, Magazino and Vinson. The Court has hereby **ACCEPTED** the waivers.

The Court cannot make a judicial determination that a potential conflict of interest exists between Alpha Omega, Germaine, and Zoetics' retained counsel, Sisco-Law, and their duties to their former clients Magazino, Holmes, and Vinson.

Finally, the Court concludes a potential conflict of interest exist between Germaine and Zoetic's retained counsel, Sisco-Law, and their former clients Courtney and Carruthers. The court finds the potential conflicts have not been waived.

So ordered.

ENTER:

                                                                  s/J. RONNIE GREER
                                                      UNITED STATES DISTRICT JUDGE